UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KARRIE KIRKLAND, | CASE NO. 3:10CV2693 |
| Plaintiff, | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| v. | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | |

Karrie Kirkland ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying her application for Disability Income Benefits ("DIB"). ECF Dkt. #1. For the following reasons, the decision of the Commissioner is affirmed.

I.  **PROCEDURAL AND FACTUAL HISTORY**

On October 15, 2006, Plaintiff filed an application for DIB[1] alleging disability beginning June 1, 2005. ECF Dkt. #13 at 165-170.[2] Plaintiff met the insured status requirements through June 30, 2010. The SSA denied Plaintiff's application initially and on reconsideration. *Id.* at. 132-133.

Plaintiff filed a request for an administrative hearing. *Id.* at 152. On December 5, 2008, an ALJ conducted an administrative hearing where Plaintiff was represented by counsel. *Id.* at 82-117. At the hearing, *via* video conference, the ALJ accepted the testimony of Plaintiff and Charles H.

---

[1]Plaintiff was awarded DIB benefits commencing on February 10, 2002 but the benefits were terminated when it appeared that she had the capacity to return to work on April 26, 2005. The pending application was filed a few weeks after her previous benefits were terminated.

[2] Page numbers refer to "Page ID" numbers in the electronic filing system.

McBee, a vocational expert ("VE"). *Id.* On February 4, 2009, the ALJ issued a Decision denying benefits. *Id.* at 69-81. Plaintiff filed a request for review, which the Appeals Council denied. *Id.* at 62-66.

On November 29, 2010, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On March 19, 2012, Plaintiff filed a brief on the merits. ECF Dkt. #20. On May 3, 2012, Defendant filed a brief on the merits. ECF Dkt. #21. With leave of Court, Plaintiff filed a reply brief on May 29, 2012. ECF Dkt. #24.

**II**. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

The ALJ determined that Plaintiff suffered from disorders of the lower extremities, reflex sympathy dystrophy[3], and affective disorders, which qualified as severe impairments under 20 C.F.R. §404.1521 *et seq.* ECF Dkt. #13 at 74. The ALJ further determined that Plaintiff suffered from carpal tunnel syndrome and a history of kidney stones, which constituted non-severe impairments. The ALJ then concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1(20 C.F.R. 404.1525, and 404.1526). *Id.* at 75.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform the sedentary work as defined in 20 C.F.R. 404.1567(a), except she requires a sit/stand option and is only able to perform work that is simple and does not require more than brief contact with the public. The ALJ further found that, although Plaintiff was unable to perform past relevant work, there exist jobs in significant numbers in the national economy that Plaintiff can perform, including cable worker, food and beverage order clerk, and hand mounter. *Id.* at 79. Accordingly, the ALJ determined that Plaintiff had not been under a disability as defined in the SSA and was therefore not entitled to benefits. *Id.* at 80.

---

[3]Reflex sympathetic dystrophy syndrome or complex regional pain syndrome ("RSDS") is a chronic pain condition that can affect any area of the body, but often affects an arm or a leg.

III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

To be eligible for benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423(a) & (d), 1382c(a). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* The claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir.1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. §§ 404.1520(a) (4), 416.920(a)(4):

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

**IV.    STANDARD OF REVIEW**

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health and Human Servs.*, 736 F.2d 365 (6th Cir. 1984).

**V.    ANALYSIS**

Plaintiff argues that the ALJ erred when he characterized her carpal tunnel syndrome as a non-severe impairment, and when he failed to consider that impairment in formulating her RFC, which included no limitations in handling, feeling, manipulating, or reaching. Second, Plaintiff contends that the ALJ failed to properly assess Plaintiff's credibility with regard to her pain and limitations from RSDS pursuant to SSR 96-7p. Finally, Plaintiff contends that the ALJ failed to properly assess her RSDS pursuant to SSR 03-2p.[4] Because Plaintiff's second and third argument are related, they shall be considered together for ease of analysis.

---

[4] Plaintiff does not challenge the ALJ's assessment of her mental impairments.

A brief summary of RSDS, its diagnosis and treatment, is necessary for the purpose of analyzing Plaintiff's disability claim.  SSR 03-2p reads, in pertinent part:

> A diagnosis of RSDS/CRPS requires the presence of complaints of persistent, intense pain that results in impaired mobility of the affected region. The complaints of pain are associated with:
>
> • Swelling;
>
> • Autonomic instability—seen as changes in skin color or texture, changes in sweating (decreased or excessive sweating), skin temperature changes, or abnormal pilomotor erection (gooseflesh);
>
> • Abnormal hair or nail growth (growth can be either too slow or too fast);
>
> • Osteoporosis; or
>
> • Involuntary movements of the affected region of the initial injury.
>
> Progression of the clinical disorder is marked by worsening of a previously identified finding, or the manifestation of additional abnormal changes in the skin, nails, muscles, joints, ligaments, and bones of the affected region. Clinical progression does not necessarily correlate with specific timeframes. Efficacy of treatment must be judged on the basis of the treatment's effect on the pain and whether or not progressive changes continue in the tissues of the affected region.
>
> Reported pain at the site of the injury may be followed by complaints of muscle pain, joint stiffness, restricted mobility, or abnormal hair and nail growth in the affected region. Further, signs of autonomic instability (changes in the color or temperature of the skin and frequent appearance of goose bumps) may develop in the affected region. Osteoporosis may be noted by appropriate medically acceptable imaging techniques. Complaints of pain can further intensify, and can be reported to spread to involve other extremities. Muscle atrophy and contractures can also develop. Persistent clinical progression resulting in muscle atrophy and contractures, or progression of complaints of pain to include other extremities or regions, in spite of appropriate diagnosis and treatment, hallmark a poor prognosis.

SSR 03-2p at 3-4.  The regulation recommends treatment that increases mobility.  The use of pain medication and pain blocks are recommended to both minimize pain and promote the individual's ability to tolerate greater mobility in order to facilitate physical therapy.  *Id.* at 3.

At the hearing, Plaintiff testified that she was a nurses' aide for twenty years.  ECF Dkt. #13 at 88.  She has a significant history of left lower extremity issues for which she received an award of disability for approximately three years (February 10, 2002 to April 19, 2005).  *Id.* at 89.  According to information provided during a consultative examination in 2007, Plaintiff underwent arthroscopic surgery in 2002 on her left knee, and she suffered a broken left ankle that same year

-5-

that required hardware placement. *Id.* at 331. According to other medical reports, she suffered the ankle fracture in 2004. *Id.* at 371. At the hearing, she testified that she had a second arthroscopic surgery on her left knee in 2004. *Id.* at 93.

According to Plaintiff's testimony, she can no longer work because both of her knees swell and she is in constant pain. *Id.* at 92. Her pain is eight to nine on a scale of one to ten without medication, and five to six out of ten with medication. *Id.* at 102-103. She takes 50 mg. of Vicodin twice a day. *Id.* at 103. She can only sit or stand for approximately fifteen to twenty minutes, *Id.* at 100, and she falls approximately twice a week because her left knee gives out. *Id.* at 104.

Plaintiff testified that she is afraid to leave the house for fear of falling. *Id.* at 97. She cannot sleep because of the pain, and has difficulty concentrating. *Id.* at 92, 109. She only sleeps a few hours per night. *Id.* at 107. Her daughter, who is a stay-at-home mom and lives with Plaintiff, performs all of the housekeeping tasks. *Id.* at 90, 95. Plaintiff 'just sit[s] around," she reads and watched television. *Id.* at 95. Plaintiff cannot stand in order to wash dishes or to vacuum. *Id.* She is able to fold clothes and straighten a little, but she cannot climb stairs. *Id.* at 96, 101.

Plaintiff attributed her pain to RSDS, which was diagnosed after her previous award of benefits was terminated. *Id.* at 102. Plaintiff further testified that she has pain in both hands, which she attributed to rheumatoid arthritis. *Id.* at 108. The pain in Plaintiff's left hand is more pronounced that the pain in her right hand. *Id.* She also suffers from bipolar disorder, which she treats with Zoloft. *Id.* at 94. Plaintiff testified that she sees her family physician approximately twice a year. *Id.* at 94. Although Plaintiff is overweight, she follows no nutrition or exercise program. At the hearing, she testified that she does not perform any physical therapy since it aggravates her knees and causes greater swelling and pain. *Id.* at 101,103.

Medical records establish that Plaintiff sought treatment at the Cleveland Clinic following her first knee surgery in 2002. Jack T. Andrich, M.D. observed that Plaintiff's pain was "out of proportion with the medical findings," and based upon his concerns that she *might* be suffering from RSDS, he recommended evaluation and treatment at the complex patellofemoral pain clinic. *Id.* at 455 (emphasis added). Despite Dr. Andrich's recommendation, Plaintiff did not seek treatment at the pain clinic until 2005, after her second knee surgery.

-6-

In medical notes from Plaintiff's November 2, 2004 appointment, Leonardo Kapural, M.D., Ph.D., observes, "Apparently, [Plaintiff] was told that she may have [RSDS], I do not see any evidence of [RSDS], no discoloration, allodynia, even hyperalgesia, no temp changes or skin tone." *Id.* at 422. Plaintiff was diagnosed with knee osteoarthritis at that appointment. *Id.* at 427. According to Dr. Kapural's notes, he recommended a therapeutic lumbar sympathetic block and a follow-up appointment in two or three weeks in order to "finally [rule out RSDS]." *Id.*

Plaintiff underwent a series of therapeutic lumbar sympathetic blocks from January 24, 2005 to February 24, 2006. *Id.* at 427. *Id.* at 377, 384, 396, 402, 405. The medical notes from the pain blocks establish that Plaintiff experienced pain in the left knee with palpation, and that allodynia (pain due to a stimulus which does not normally provoke pain) of the right knee[5] was diagnosed, but no effusion or discoloration was noted. *Id.* at 381-405. Plaintiff experienced good pain control with the blocks. *Id.* at 384, 387. Physical therapy was recommended as part of the overall treatment plan at each visit. *Id.* at 397, 385, 378. Pain mediation was prescribed, which included Hytrin, Ultram, and Pregabalin. *Id.* at 380.

SSR 03-2p reads, in pertinent part, "Patients who are noted to have a good response to local sympathetic blocks may be considered candidates for surgical sympathectomy." SSR 02-3p at 3. Although Plaintiff experienced pain relief with the blocks, there is no indication that Plaintiff's physicians at the Cleveland Clinic considered her a candidate for surgery. Furthermore, there is no record of Plaintiff undergoing any physical therapy, which, as stated earlier, is an essential part of the treatment for RSDS according to the SSR 03-2p.

Plaintiff underwent three physical examinations between February of 2005 and January of 2007, however the medical notes from those examinations do not support her testimony regarding debilitating pain in her knees. Steven B. Shine, D.O., the orthopaedist who performed Plaintiff's previous knee surgery, examined her on February 6, 2005. *Id.* at 510-511. Plaintiff reported

---

[5]In her brief, Plaintiff writes that allodynia of the left knee was diagnosed. Allodynia of the right knee was consistently diagnosed. *Id.* at 390, 387, 384, and 377. At a December 5, 2005 appointment, allodynia of the left knee was diagnosed, but the physician noted that there were "no color changes vs right leg." *Id.* at 393.

-7-

"continued catching in the knee" but attributed her ongoing pain in her left leg to her ankle. Dr. Shine wrote, "Gait is painful due to her left ankle, not her knees." *Id.* at 511.

On September 13, 2006, Plaintiff was evaluated by Joanne Schneider, MSN, CNS, CNP, for the purpose of addressing ongoing intense pain in her left knee. *Id.* at 371-373. Nurse Schneider noted that Plaintiff's social and recreational activities and her house work was moderately to severely restricted. Plaintiff reported that she reclined fifteen to eighteen hours a day. However, her pain disability score was 36/70, suggesting only moderate functional impairment. Plaintiff conceded that she was able to cook meals. *Id.* at 372. Although Nurse Schneider recommended daycare treatment for three weeks at the clinic, Plaintiff declined treatment because she did not want to be away from home for that length of time, and she did not know if she could afford housing. *Id.* at 373.

Issam Al-Turk, M.D performed a consultative examination for the Bureau of Disability Determination on January 8, 2007. *Id.* at 328. He noted that her knees revealed no tenderness, redness, warmth, swelling or laxity, and that the range of motion was normal with pain on the left. *Id.* at 330. Her lower extremities showed no clubbing or cyanosis, and there were no varicosities, calf tenderness, statis dermatitis or dependent edema. *Id.* Dr. Al-Turk wrote, "Based on the objective findings [Plaintiff] would have difficulty in performing work related activities that demand prolonged walking. Sitting, standing, lifting, carrying, handling objects, hearing, speaking, and traveling are not affected. *Id.* at 331. In February of 2007, Dimitri Teague, M.D., a state agency reviewing physician, concluded that Plaintiff was capable of performing light exertional work with no more than occasional climbing and balancing, and frequent balancing, stooping, kneeling, crouching, and crawling, and no concentrated exposure to workplace hazards like heights. *Id.* at 361-366. Dr. Teague relied upon Dr. Al-Turk's examination findings that Plaintiff had a stable gait without an ambulatory aid, normal range of motion in her knee, lack of tenderness and swelling, and a negative straight leg rasing test. *Id.* at 361.

The foregoing evidence is the only evidence in the record regarding Plaintiff's knee pain, with the exception of Plaintiff's own testimony. Although Plaintiff's treating physician, Stephanie

F. Gibson, M.D. treated Plaintiff's mental impairments, as well as pain in her hands and other various short-term physical maladies, Dr. Gibson did not treat Plaintiff's knee pain.

Turning to Plaintiff's first argument, at step two, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not considered severe when it "does not significantly limit [one's] physical or mental ability to do basic work activities." §404.1521(a). The Regulations define basic work activities as being the " 'abilities and aptitudes necessary to do most jobs,' and include: (1) physical functions; (2) the capacity to see, hear and speak; (3) '[u]nderstanding, carrying out, and remembering simple instructions;' (4) '[u]se of judgment;' (5) '[r]esponding appropriately to supervision, co-workers, and usual work situations;' and (6) '[d]ealing with change in a routine work setting.'" *Simpson v. Comm'r Soc. Sec.*, 344 Fed. Appx. 181, 190 (6th Cir. Aug.27, 2009) (quoting 20 C.F.R. §§ 404.1521(a)-(b) and 416.921(a)-(b)).

At step two, the term "significantly" is liberally construed in favor of the claimant. The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities." 20 C.F.R. §404.1520a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a " *de minimis* hurdle" in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p (July 2, 1996).

Once the ALJ determines that a claimant suffers a severe impairment at step two, the analysis proceeds to step three; any failure to identify other impairments, or combinations of impairments, as severe in step two is harmless error. *Maziars v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987). However, all of a claimant's impairments, severe and not severe, must be

considered at every subsequent step of the sequential evaluation process. See C.F.R. §404.1529(d); C.F.R. §§ 416.920(d).

Plaintiff contends that she was diagnosed with carpal tunnel syndrome, and although she agrees with the ALJ's conclusion that the medical evidence in the record does not support the conclusion that the condition actually lasted twelve months, she argues that the ALJ must also consider conditions that can be expected to last twelve months. Plaintiff first reported bilateral hand numbness at her February 6, 2006 appointment with Dr. Gibson, her treating physician. ECF Dkt. #13 at 568. She told Dr. Gibson that the pain began three weeks prior to the appointment. Dr. Gibson diagnosed carpal tunnel syndrome and prescribed wrist splints to be worn in the evening. Dr. Gibson noted that if the condition did not improve, Plaintiff should consider surgery. *Id.* at 570.

At her appointment on March 16, 2006, Plaintiff reported that her carpal tunnel syndrome was worse, and that the wrist splints were not helping. *Id.* at 580. Dr. Gibson referred Plaintiff for a nerve conduction study. *Id.* at 566-567. The study, which was performed on March 31, 2006, revealed a moderate right median neuropathy at the wrist, but was not suggestive of a left median neuropathy at the wrist because of an inability to obtain a left DML. *Id.* at 555.

Plaintiff canceled several appointments during the summer of 2006. *Id.* at 585-587. Her next appointment with Dr. Gibson was on October 18, 2006, where she complained about back pain, but did not mention any pain in her hands. *Id.* at 559. The next appointment at which Plaintiff complained about pain in her hands was February 26, 2007, approximately one year after her initial diagnosis. *Id.* at 554. At the 2007 appointment, Dr. Gibson diagnosed arthritis, noting that Plaintiff's grandmother and sister both suffered from degenerative arthritis. *Id.* At an appointment on April 9, 2007, Plaintiff complained of arthralgia and Dr. Gibson tentatively diagnosed rheumatoid arthritis, but indicated that she was waiting for laboratory results to confirm her diagnosis. *Id.* at 557. From late 2007 to 2009, Plaintiff saw Dr. Gibson sporadically for GERD, a plantar heel spur, and a right ear blockage, but she did not report any pain in her hands. *Id.* at 605-610.

Although Plaintiff experienced pain in her hands in early 2006 and early 2007, the ALJ correctly concluded that the medical records do not support the conclusion that the pain lasted for twelve months at any given time. Plaintiff argues that the ALJ was nonetheless required to consider

her non-severe impairments in formulating her RFC. However, the ALJ specifically limited Plaintiff to lifting and carrying less than ten pounds in deference to Plaintiff's carpal tunnel syndrome diagnosis. As a consequence, the ALJ considered Plaintiff's testimony regarding the pain in her hands and incorporated it in the RFC. Furthermore, Dr. Gibson's medical records do not reflect any functional limitations resulting from her carpal tunnel syndrome diagnosis. Accordingly, the ALJ did not fail to consider Plaintiff's carpal tunnel syndrome when he did not include any limitations for handling, feeling, manipulating, or reaching.

Next, Plaintiff contends that the ALJ did not properly evaluate Plaintiff's complaints of debilitating pain and that the ALJ failed to properly assess Plaintiff's RSDS pursuant to the Social Security Regulations. The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 416.929. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the

-11-

location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40.

Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence." *Id.* "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir.2007), quoting Soc. Sec. Rul. 96–7p, 1996 WL 374186, *4.

> The ALJ provided the following assessment of Plaintiff's testimony regarding her pain:
>
> I find the claimant's statements concerning her impairments and their impact on the ability to work are considerably more limited and restricted than is established by the medical evidence. The alleged limitations are self-imposed restrictions not supported in the medical evidence by clinical signs, symptoms, or laboratory findings, and although the claimant has stated she has numerous restrictions in activities of daily living and being unable to work due to a myriad of impairments, no such restrictions have been objectively quantified. . .[T]he totality of her statements are inconsistent with the objective evidence that does not demonstrate the existence of limitations of such severity as to preclude the claimant from performing any work on a regular and continuing basis.
>
> The Regulations provide that an individual's statement as to pain and other symptoms shall not alone be conclusive evidence of disability; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged (42 U.S.C. 423(d)(1)). Because the claimant has failed to establish a correlation between her allegations and the objective medical evidence, I find the claimant not fully credible (20 C.F.R. 404.1529(c)(3) and Social Security Ruling 96-7p).

ECF Dkt. #13 at 77.

For purposes of Social Security disability evaluation, RSDS can be established in the presence of persistent complaints of pain that are typically out of proportion to the severity of any

-12-

documented precipitant and one or more of the previously listed clinically documented signs in the affected region at any time following the documented precipitant. SSR 03-2p at 4. When longitudinal treatment records document persistent limiting pain in an area where one or more of these abnormal signs has been documented at some point in time since the date of the precipitating injury, disability adjudicators can reliably determine that RSDS is present and constitutes a medically determinable impairment. It may be noted in the treatment records that these signs are not present continuously, or the signs may be present at one examination and not appear at another. Transient findings are characteristic of RSDS, and do not affect a finding that a medically determinable impairment is present. *Id.* at 4-5.

Plaintiff incorrectly likens RSDS to fibromyalgia arguing that objective medical tests are of little aid or relevance in determining the severity of RSDS. To the contrary, SSR 03-2p reads, in pertinent part:

> [W]henever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. Although symptoms alone cannot be the basis for finding a medically determinable impairment, once the existence of a medically determinable impairment has been established, an individual's symptoms and the effect(s) of those symptoms on the individual's ability to function must be considered both in determining impairment severity and in assessing the individual's residual functional capacity (RFC), as appropriate.

SSR 03-2p at 6.

Here, the medical records do not establish that Plaintiff experienced any of the clinically documented signs listed in SSR 03-2p, that is, autonomic instability (seen in changes in skin color or texture, changes in sweating or gooseflesh, abnormal hair or nail growth), osteoporosis, or involuntary movements of the affected region of the initial injury. To the contrary, the medical records establish an absence of color change and effusion. Moreover, the medical records do not support the extreme limitations asserted by Plaintiff. No treating or consulting physician observed that Plaintiff was more than moderately limited by her pain. There is also no evidence that Plaintiff

-13-

attempted any ongoing physical therapy, despite the emphasis placed upon physical therapy in the Social Security Ruling as a treatment for RSDS. "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that a claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir.2004). Accordingly, the ALJ's assessment of Plaintiff's RSDS and the intensity of the pain associated with the condition was not in error.

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

DATE: June 7, 2012

                                           */s/George J. Limbert*
                                           GEORGE J. LIMBERT
                                           UNITED STATES MAGISTRATE JUDGE